JOHN H. SCHROEDER WINE AND LIQUOR COMPANY, Appellant, v. WILLIS COAL AND MINING COMPANY et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted November 3, 1913. Opinion Filed December 2, 1913.

1. GARNISHMENT: Exemptions: Illinois Law: Conflict of Laws: Comity. An employer who is garnished in this State, in an action against an employee living in Illinois and not personally served nor appearing in the action, may, under the doctrine of comity, set up as a defense the exemption provided for by Sec. 14, p. 1252, Hurds' Revised Statutes of Illinois, 1912, which provides that the wages of a wage-earner who is the head of a family, to the amount of $15.00 a week, shall be exempt from garnishment, and which requires every employer to pay such exempt wages to the employee when due, upon his making and delivering an affidavit that he is the head of a family, notwithstanding any garnishment proceedings.

2. ———: ———: ———: Right of Garnishee to Set up Exemptions. Sec. 14, p. 1252, Hurds' R. S. of Illinois, 1912, provides that the wages of a wage-earner who is the head of a family, to the amount of $15 a week, shall be exempt from garnishment, and requires every employer to pay such exempt wages to the employee when due, upon his making and delivering an affidavit that he is the head of a family, etc., notwithstanding any garnishment proceedings. *Held*, that an employer who is garnished in this State, in an action against an employee living in Illinois and not personally served nor appearing in the action, may set up as a defense the exemption provided for by that statute, where the employee makes and delivers the required affidavit to him.

3. **CONFLICT OF LAWS: Comity.** The courts of one State commonly recognize the laws of another State, where the general policy of the two States on the subject is the same.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Frank Landwehr* for appellant.

(1) For the purposes of attachment a debt has a situs wherever the debtor can be found. Neither is it material that the debt was not made payable in the State where the attachment proceedings are instituted. Wyeth H. & M. Co. v. Lang, 54 Mo. App. 147; Wyeth H. & M. Co. v. Lang, 127 Mo. 242; Dinkins v. Crunden Martin W. Co., 99 Mo. App. 310; Howland v. Railroad, 134 Mo. 474; Shull v. Railroad, 221 Mo. 140; Reno on Non-Residents, sec. 148; Harvey v. Railroad, 50 Minn. 405, 17 L. R. A. 84; Pennoyer v. Neff, 95 U. S. 714; Waples on Debtor and Creditor, page 302. (2) Exemptions are a personal privilege and cannot be pleaded except by a personal appearance of a party entitled to claim them. Neither are exemption laws a part of the contract; they are a part of the remedy and subject to the law of the forum. Howland v. Railroad, 134 Mo. 474; Railroad v. Sturn, 174 U. S. 710; Freeman on Executions, sec. 209; Railroad v. Barron, 83 Ill. 365; Broad-

street v. Clark, 65 Iowa, 670; Willard v. Sturn, 96 Iowa, 555; King v. Cross, 175 U. S. 399; Waples on Debtor and Creditor, page 302; Osburn v. Schutt, 67 Mo. 712. (3) When there is a seizure of defendant's property at the commencement of the action, or, in garnishment, what is equivalent to a seizure at the time, namely, a service of process upon the garnishee, accompanied by publication against the nonresident defendant, such process is due process of law and the judgment rendered will divest the defendant of his title to such property and will protect the garnishee from the danger of double payment. Reno on Nonresidents, sec. 241; Molyneux v. Seymour, 30 Ga. 440; 2 Black on Judgments, sec. 52; Shinn on Attachments, secs. 486 and 861; 1 Greenleaf on Evidence, sec. 543.

*Dawson & Garvin* and *Leonard Wilcox* for respondent.

(1) Courts of justice have continually acted upon "the comity of the nation," and in the silence of any positive rule affirming or denying or restraining the operation of foreign laws presume the tacit adoption of them by their own government unless they are repugnant to its policies or prejudicial to its interests. Hilton v. Guyot, 159 U. S. 113; Banchor v. Gregory, 9 Mo. App. 102; Stoeckman v. Railroad, 15 Mo. App. 509; Zuppan v. Bauer, 17 Mo. App. 682; 2 Wharton on Conflict of Laws (3 Ed.), p. 1590; Demmick v. Railroad, 103 U. S. 18. (2) The public policy of the State of Missouri with respect to reaching wages by process of garnishment is like or quite similar to the laws of Illinois on that subject. R. S. 1909, sec. 2415; Laws 1911, p. 141. (3) The wages of the head of a family residing with the same to the amount of $15.00 per week is exempt from garnishment by the laws of Illinois, and the surplus only, if any, is permitted to be held by the employer to abide the event of a garnishment proceeding. Hurd Rev. Stat. of Ill. 1905, p. 1119,

sec. 14; Becker v. Railroad, 158 Ill. App. 520, affirmed 250 Ill. 40. (4) Under the facts and circumstances of these cases the trial judge rightly exercised his discretion to act upon "the comity" and enforce the letter of the Illinois law and the spirit of the Missouri law, and thereby did complete justice to all parties. Todd v. Railroad, 33 Mo. App. 110; Fielder v. Jessup, 24 Mo. App. 91; Railroad v. Maltby, 34 Kan. 125; Railroad v. Barron, 83 Ill. 365; Wright v. Railroad, 19 Neb. 175; Bullard v. Chaffee, 61 Neb. 83; Railroad v. Dooley, 78 Ala. 524; Hilton v. Guyot, 159 U. S. 165. (5) The enforcement of foreign laws respecting exemption of wages by comity, approved by this court in the Todd and Jessup cases (33 Mo. App. 115; 24 Mo. App. 95, 96), has been expressly declared by the Legislature of Missouri as the policy of this State. Act of April 18, 1911, Laws 1911, p. 14. (6) The judgment below was within the power of the court, acting *ex comitate*. And in view of the action of the Legislature in passing the Act of April 18, 1911, a reversal of the judgment below ought not to be granted appellant, no lien or vested right having been established. Roenfeldt v. Railroad, 180 Mo. 564; Schuster v. Weiss, 114 Mo. 173; McGarry v. Coal Co., 93 Mo. 240; Railroad v. Mottley, 219 U. S. 468; Lovell v. Davis, 52 Mo. App. 345; R. S. 1909, sec. 1736. (7) Until there has been a valid judgment against the defendant there can be no final judgment against the garnishee; and the burden is on plaintiff to show such prior judgment. Hauptman v. Whittle, 85 Mo. App. 188-191; McCloon v. Beattie, 46 Mo. 391. And appellant's abstracts do not show such judgment, unless a mere recital that defendant "was brought in by publication" is sufficient. (8) Garnishment is a statutory proceeding. Where the statute says that a person or debt shall not be subject to garnishment, that person, or the garnishee summoned and owing such debt, can make the defense that the pro-

ceeding is not authorized by law, and Ashburn v. Schutt does not apply. Davis v. Meredith, 48 Mo. 263; Barnes v. W. W. & Co., 135 Mo. App. 491; Cooper v. Scyoc, 104 Mo. App. 432. (9) A proceeding by garnishment is not in the nature of a personal action against the garnishee; the garnishee cannot even by his voluntary appearance and answer confer any, jurisdiction upon the court as to the debt in his hands unless proper steps have been taken to bring that debt into court, for the purpose of condemnation. That proposition in this State at least is fully settled. Haley v. Railroad, 80 Mo. 112; Fletcher v. Ware, 81 Mo. 524; Masterson v. Railroad, 20 Mo. App. 653.

REYNOLDS, P. J.—Appellant, plaintiff below, brought its action before a justice of the peace in the city of St. Louis against one Perrina and another, to recover a balance alleged to be due it on an account, the balance claimed being $127.33. A writ of attachment was sued out against the defendants and the Willis Coal & Mining Company summoned as garnishee, notice of attachment of any sum or sums due by it to defendants being duly served upon the garnishee. There was no personal service upon defendants, whatever service was had on them being by publication, nor did they appear or answer, but judgment went against them by default on due proof of publication of notice. The garnishee appeared and in March, 1910, answered before the justice, denying any indebtedness to one of the defendants but admitting that it owed Perrina $86.30; that Perrina was the head of a family and a resident of Illinois, working for the garnishee in that State, and that the amount due him by the garnishee is for wages earned in the State of Illinois during the month of March, 1910, payable in Illinois; that defendant served upon the garnishee in the State of Illinois, an affidavit purporting to be made by him, a

179 App. 7

copy of which was attached, and had also made a demand in writing upon the garnishee, a copy of which was also attached to the answer. Judgment was rendered by the justice in favor of plaintiff against defendants for the debt, and against the garnishee for $85.30. In due time the garnishee prosecuted its appeal to the circuit court. In that court it filed an amended answer in which it was set out, in substance, that it is a corporation duly organized by virtue of the laws of the State of Missouri, and a citizen of this State; that it has also complied with the laws of the State of Illinois permitting foreign corporations to do business in that State; that on the dates hereinafter mentioned it owned and operated coal mines in the State of Illinois; that it did not owe one of the defendants named anything, either due or to become due, but that the other defendant, Perrina, was employed by it as a laborer and labored in its mines in the State of Illinois; that at the time of the service of the garnishment, it owed Perrina as wages for labor in the mines in Illinois, done during the month of March, 1910, the sum of $86.30, which sum was due and payable to Perrina in the State of Illinois; that the garnishee had duly notified both defendants of the fact that it had been summoned as garnishee in the proceedings begun before the justice before mentioned; that those defendants did not appear; that no service had been had upon them or either of them, otherwise than by publication, and no jurisdiction had been acquired by the justice over the person of either of the defendants; that the defendant Perrina had made and delivered to the garnishee his affidavit that he was the head of a family living in Illinois with him and dependent upon him for support and that he desired to avail himself of the provision of the law of Illinois which allowed him fifteen dollars a week as exempt from garnishment; and that Perrina had afterwards made de-

mand upon the garnishee for payment of the amount due him for his labor, under penalty of being sued in the State of Illinois by him (Perrina), to recover the amount of wages if payment was refused.

This answer further avers, on information and belief, that Perrina is the head of a family and a resident of the State of Illinois, and that the claim in suit by plaintiff was for the price of liquors sold by plaintiff to Perrina and his partner, the other defendant, in the State of Illinois. It further pleaded the law of the State of Illinois, to-wit, Act May 11, 1901, now section 14, p. 1252, "Hurd's Revised Statutes of Illinois, 1912," setting out that law; that the wages owing by the garnishee to Perrina at the time this garnishment was attempted to be made were the earnings for four weeks from March 1st to March 31st, 1910, and exceeded the amount exempted as aforesaid by $26.30. Averring that the garnishee has at all times been willing to pay to plaintiff and into court for it this excess but that plaintiff has refused to release the garnishee except upon payment of the full amount sued for, it is further averred that pursuant to Perrina's notice and demand above referred to, he had brought suit against the garnishee for his wages before a justice of the peace in the proper town in the State of Illinois and that the garnishee had been summoned therein and was without any defense under the law of Illinois except as to the $26.30, and being prevented by plaintiff here from paying Perrina's exemption given to him under the laws of Illinois, judgment for $86.30 was rendered against the garnishee and in favor of Perrina in his said suit, from which judgment the garnishee has appealed to the Illinois Circuit Court, where the case is now pending. The garnishee, therefore, the premises considered, avers that the justice of the peace before whom the present suit had been pending and the circuit court now, in natural justice and equity,

should, as a matter of comity, give effect to the Illinois exemption law and enjoin plaintiff from further prosecuting these proceedings and discharge the garnishee upon payment into court of the sum of $26.30, less a proper allowance by the court for attorney's charges.

Along with this amended answer, the garnishee filed a motion to dismiss the cause as to it. This motion was overruled. It is unnecessary to consider it here. The cause thereupon went to trial on the 5th of June, 1911, before the court, a jury having been waived. The evidence tended to establish the averments of the amended answer, it being conceded that respondent owed Perrina $86.30 for wages for labor done in March, 1910.

The law of Illinois above referred to was also put in evidence. Under a finding that the evidence established the above facts, the trial court found that sixty dollars of the indebtedness of $86.30 were, under the laws of Illinois referred to, exempt from attachment under garnishment proceedings; that the garnishee had duly tendered and offered to pay into court the $26.30; that plaintiff had refused to release the garnishee or dismiss the garnishment except upon payment of the full sum of $86.30. Whereupon the court found that only this sum of $26.30 was subject to garnishment; that the garnishee had duly tendered and offered to pay it into court and plaintiff had refused it, and the court adjudged that the garnishee pay that sum into the registry of the court within five days from the date thereof, for the use of plaintiff, and that plaintiff pay the cost of the proceedings. From this judgment, after interposing a motion for new trial and saving exception to the action of the court in overruling it, plaintiff has duly perfected its appeal to this court.

While a number of points are made by the learned and industrious counsel for the respective parties, there are but two which we deem it necessary to consider and determine: First, whether the garnishee could set up the wage exemption, the defendant not appearing or interpleading; second, whether the courts of our State will recognize the statute of Illinois covering exemption of wages for labor performed in that State.

It is urged by the learned counsel for appellant that the right to exemption of this fifteen dollars is a personal privilege which can only be interposed by the debtor himself, and that he not having done so by way of interpleader or otherwise before the justice of the peace or the circuit court of our State, the garnishee cannot assert it for him. Counsel cites several cases which are supposed to be in support of this contention, among them Osborne v. Schutt, 67 Mo. 712 and Howland v. Chicago, R. I. & Pac. Ry. Co., 134 Mo. 474, 36 S. W. 29, which cases may be said to be typical of the others. On consideration of these cases, it does not appear that they are applicable here. In those cases and the like it is said that the claim to exemption is a personal privilege, but the exemption claimed was not alone wages, but exemptions given, for instance, under section 2180, Revised Statutes 1909. In such cases the matter of selection was largely with the debtor and is a personal privilege, the officer being required to apprise him of his right. It is then for the debtor to elect most of the articles he desires to have exempt. [See sections 2183, 2184, Revised Statutes 1909.] We think there is a marked difference between the law giving such exemptions and our own law (Sec. 2415, R. S. 1909), exempting a certain amount of wages from process of garnishment. It is there expressly provided that "no one shall be charged as garnishee for more than ten per cent of any wages," etc.

Under the Illinois statute pleaded and in evidence, "the wages for services of a wage-earner who is the head of a family and residing with the same to the amount of fifteen dollars per week," is not only declared to be exempt from garnishment but the law further provides: "Every employer shall pay to such wage-earner such exempt wages not to exceed the sum of fifteen dollars per week of each week's wages earned by him, when due, upon such wage-earner making and delivering to his employer, his affidavit that he is such head of a family and residing with the same, notwithstanding the service of any writ of garnishment upon such employer, and the surplus only above such exempt wages shall be held by such employer to abide the event of the garnishment suit." So that by our law, the garnishee is given an affirmative defense, and by the Illinois law he is required to pay the wages to the wage-earner, "notwithstanding the service of any writ of garnishment." No personal privilege of the debtor is here involved as in the Osborne and Howland cases, supra, and the like. The statutes of each State forbid the seizure of the wages by the process of garnishment and declare that no process of garnishment shall reach them. Our court has recognized this as a true interpretation of our law. Thus in Cooper v. Scyoc, 104 Mo. App. 414, l. c. 432, 79 S. W. 751, after setting out that the plaintiff, who was defendant in the action under which the garnishment had been sued out, had claimed his exemption at the beginning of the action and had continued to make his claim of exemption of his wages, it is said: "Even if he had made no claim to his exempt wages, there is no evidence that he waived his right, and without a waiver they should not be subject to the process of garnishment," referring to what is now section 2415, Revised Statutes 1909.

Again, in Barnes v. William Waltke & Co., 135 Mo. App. 488, 116 S. W. 7, our court, answering the propo-

sition that the debtor's salary exemption had not been mentioned in the garnishee's answer and therefore was waived, has said (1. c. 491): "No doubt it would be better to call attention to such a fact in answering, even though the interrogatories make no inquiry about it, as those before us made none; but we decline to hold the omission rendered the exemption unavailable to the garnishee as a defense, since the record contains proof of the essential facts that Mathias was head of a family and resident of the State and this evidence was palpably introduced to prove the immunity of all but ten per cent of his wages from levy. The immunity was asserted by the testimony and in the motion for new trial, which alleged an excessive judgment." The correctness of this rule is fully recognized in the decision of our Supreme Court in Davis et al. v. Meredith et al., 48 Mo. 263, where the claim to the wage exemption was made by the garnishees in their answer and sustained by our Supreme Court.

The law of Illinois not only gives this exemption to the laborer whenever it appears that he is the head of a family and resides with it, but exempts wages up to a certain amount from the process of garnishment and expressly requires the employer to pay such wage-earner the exempt wages. So, in effect, does our own statute. The exemption, therefore, is more than a mere personal privilege to be exercised by the judgment debtor. It is a positive prohibition against the employer paying over the wages specified under any process of garnishment and an affirmative defense for the garnishee as against that proceeding.

The evidence in the case amply sustains the finding of the trial judge that Perrina was not only a citizen of the State of Illinois, resident and domiciled therein, but that he was the head of a family for the whole period covered in this action, and that he had made the statutory demand required. If, then, we are

to recognize this law of the State of Illinois as applicable here, there can be no question but that the garnishee, even without the interposition of the debtor in the action, had a right, as a matter of defense in the garnishment proceedings, under the law of the State of Illinois, to set up this exemption of wages.

That brings us to the other question remaining for determination. That is, whether we are to recognize the above-mentioned statute of the State of Illinois. It was duly pleaded and given in evidence.

Comity between the several States and the courts thereof has been almost universally exercised throughout this country and recognized as a sound principle, particularly so in the administration of exemption laws. How far it shall go is often in question. The injustice of forcing one who is summoned as garnishee in the courts of one State to pay over moneys of the debtor in his hands and leaving him liable to be compelled, in another State by its courts, to again pay over the moneys on the same debt, is often assigned as a reason for its recognition. Our courts have distinctly recognized it in several cases, as see Banchor v. Gregory, 9 Mo. App. 102; Stoeckman v. Terre Haute & Indianapolis R. R. Co., 15 Mo. App. 503; Zuppann v. Bauer, 17 Mo. App. 678; Hurley v. Mo. Pac. Ry. Co., 57 Mo. App. 675; Carey v. Schmeltz, 221 Mo. 132, 119 S. W. 946. In Stoeckman v. Railroad Co., supra, our court, recognizing the rule as adopted by courts of high authority, adds (l. c. 508, referring to the New York Court), "And the courts are careful to say that it is not necessary that the foreign statute should resemble the New York statute in all its details. It is sufficient that the policy of the legislation of two States upon the subject of the right of action for such an injury is the same."

In Zuppann v. Bauer, supra, after calling attention to the homogeneity of our people and the nature of

the federal union and the relations of the States of the Union to each other, it is said (1. c. 692) : "Such being our situation and relations *inter sese,* the doctrine which assigns to the statutes of a sister State of the Union no greater credit or comity than would be assigned to the laws of a foreign State, seems to be narrow, barbarous and tribal." In Carey v. Schmeltz, supra (1. c. 136 and 139), recognizing the rule of comity, it is said that it is applicable when the law of the sister State is not contrary to the policy of our own State.

As will appear by examination of the authorities referred to, the courts of one State commonly recognize the laws of another State when the general policy of the two States on the subject is alike. That this is the case with respect to the statutes of Illinois and those of our own State on the matter of exemption of wages from garnishment proceedings, is clear. There is a difference in the amount of exemption; there is no difference whatsoever in policy.

Nor is recognition of the spirit of comity confined to the courts. Our lawmakers have not only recognized it, but enforced it by the Act of our General Assembly, approved April 18, 1911 (Laws 1911, p. 141). This act consists of three sections. By the first, the garnishment of wages, the attachment of wages, either in an original action by attachment or under garnishment proceedings, is prohibited unless personal service has been had upon the defendant, and unless the suit be brought in the county where the defendant resides or in the county where the debt is contracted and the cause of action arose or accrued, and the statement filed in the cause and the writ or summons of attachment or garnishment "shall affirmatively show the place where the defendant resides and the place where the debt is contracted and the cause of action arose." The second section is distinctly founded on

comity. It provides that wages earned and payable out of this State "shall be exempt from attachment or garnishment in all cases where the cause of action arose or accrued out of this State, unless the defendant in the attachment or garnishment suit is personally served with process; and if the writ of attachment or garnishment is not personally served on the defendant, the court issuing the writ of attachment or garnishment shall not entertain jurisdiction of the cause, but shall dismiss the suit at the cost of the plaintiff. In all actions commenced in this State in which it is sought to garnish or attach wages, the petition or statement filed in such case and the summons or writ of garnishment or attachment shall affirmatively show the place where the defendant resides and the place where the debt is contracted and the cause of action arose." By the third section of this act, all acts or parts of acts inconsistent or in conflict with it in so far as they are so inconsistent and are in conflict, are repealed. It is true that this act of April 18, 1911, did not go into effect until the 19th of June, 1911, and that before the last-named date the action before us had been instituted and the judgment rendered, the latter occurring June 5, 1911. It will be observed that there is no clause in this act saving actions then pending. Whether this act applies to this action, even its scope, need not now be determined. We refer to it solely as an emphatic recognition by the General Assembly of our State of the law of comity to as full an extent, nearly, certainly in line with, what had before then been held by the courts.

Under the Illinois law these wages up to fifteen dollars a week are exempt from process of garnishment there. Shall we, applying the Illinois law by comity, hold them exempt in our jurisdiction? We answer this in the affirmative.

We are not here considering the question of where the debt of the principal debtor was contracted; we

confine ourselves to a construction of the laws of Illinois, governing the matter of garnishment for wages earned in Illinois by one of its residents, payable there and attempted to be impounded here, and whether we will recognize and give effect to that law in our courts.

In recognizing the Illinois law under the rule of comity, the learned trial judge committed no error. The judgment is affirmed. *Nortoni* and *Allen, JJ.,* concur.

